

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

FILED _____ RECEIVED
_____ ENTERED      _____ SERVED ON
        COUNSEL/PARTIES OF RECORD

JAN 16 2019

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

RICHARD WEDDLE,

       Plaintiff,

 v.

ISIDRO BACA, *et al.*,

      Defendants.

3:16-cv-00634-MMD-CBC

**REPORT AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE**

   This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

   This case involves a civil rights action filed by Plaintiff Richard Weddle ("Weddle") against Defendants Isidro Baca, David Carpenter, Jason O'Dea, Pamela Feil, Robert LeGrand, Bobby Preston, and Brian Williams (collectively referred to as "Defendants"). Currently pending before the Court is a partial motion for summary judgment filed by Defendants which asserts Counts II through VII in the amendment complaint should be dismissed. (ECF No. 24.) Weddle opposed (ECF No. 44), and Defendants replied. (ECF No. 45). Having thoroughly reviewed the record and papers, the Court recommends Defendants' motion partial motion for summary judgment be granted in part, and denied in part.

**I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

   A.  Procedural History

   Weddle is an inmate in the custody of the Nevada Department of Corrections ("NDOC"), and is currently housed at High Desert State Prison ("HDSP") in Indian Springs, Nevada. (ECF No. 10.) However, the events giving rise to this case took place at Lovelock Correctional Center ("LCC"). (*Id.*) On November 4, 2016, Weddle submitted

his initial complaint and motions. (ECF No. 1-1.) The initial complaint was never screened. However, on August 28, 2017 Weddle submitted an amended civil rights complaint pursuant to 42 U.S.C. §1983, together with an application to proceed in forma pauperis. (ECF No. 10.) In the complaint, Weddle asserted eight claims for relief against Defendants. (*Id*. at 4-32.) Weddle sought injunctive and monetary relief. (*Id*. at 33.)

Pursuant to 28 U.S.C. § 1915A(a), the Court screened Weddle's complaint on September 26, 2017. (ECF No. 11.) The Court determined that several of Weddle's claims could proceed. The partial motion for summary judgment currently before the Court seeks dismissal of some, but not all, of those claims. (ECF No. 24.)

B.    Factual Background

Each of Weddle's claims arise out the issuance of a disciplinary charge against him in September 2014 by the LCC law librarian, and the events that followed. (ECF No. 10). Generally, Weddle alleges his civil rights were violated because the disciplinary charge was false and fabricated, various LCC staff (who are named defendants) knew the charge was false. In spite of this, the disciplinary charge was allowed proceed and various LCC staff failed to take actions that would have resulted in the charge being dismissed. (*See id*.)

The alleged events giving rise to his claims are as follows. Weddle claims that on September 5, 2014, he was in the law library at LCC and he initiated a grievance pursuant to the prison policies. (*Id*. at 7.) Defendant Feil, the law librarian at LCC, retaliated against him for initiating this grievance by filing a false disciplinary charge against him for a Major Violation 25 ("MJ 25"), for threatening staff. (*Id*. at 7-8, 10.) After the disciplinary charge was issued, Weddle was ultimately taken to administrative segregation by Defendant O'Dea, who is a corrections officer at LCC. (*Id*. at 9). Although O'Dea allegedly knew the disciplinary charge was false and fabricated, he still placed him in administrative segregation. (*Id*.)

A preliminary disciplinary hearing was held on the MJ 25 violation on September 10, 2014. (*Id*. at 13.) This hearing was conducted by Defendant Preston, the Preliminary

1   Disciplinary Hearing officer, who failed to review videotape from the alleged incident and

2   refused to allow Weddle to call any witnesses. If the videotape or witnesses had been

3   presented, it would have verified that he did not threaten Feil and thus the disciplinary

4   charge was false. (*Id.*) However, his case proceeded to a disciplinary hearing.

5          The disciplinary hearing was held on October 5 and 6, 2014, This hearing was

6   conducted by the Disciplinary Hearing Officer, Defendant Carpenter, who also failed to

7   review the videotape or allow witnesses to be presented. (*Id.* at 14-15.) Ultimately,

8   Carpenter found Weddle guilty of a reduced charge – a General Violation 9 ("GV 9"), for

9   use of abusive language. (*Id.* at 17-18.) Based on this finding, Defendant Carpenter

10  sanctioned Weddle to fifteen days in disciplinary segregation.

11         Following these proceedings, Weddle filed an administrative appeal to the warden

12  at LCC. (*Id.* at 24.) In the appeal, Weddle argued Defendant Carpenter failed to follow

13  the proper prison policies in conducting the hearing by failing to review the videotape or

14  allow him to present witnesses. (*Id.* at 28.) After reviewing the appeal, Defendant

15  LeGrand upheld the Defendant Carpenter's decision and the sanction against Weddle.

16         Weddle then sought a second level appeal of Defendant LeGrand's decision to

17  LCC Warden, Defendant Baca, who agreed with LeGrand. (*Id.* at 28-29.) Ultimately,

18  Weddle sought to have this disciplinary conviction expunged from his record by

19  Defendant Williams, the Warden at HDSP, who refused to do so. (*Id.* at 31, 33).

20         Based on these facts, Weddle alleges violations of his Fourteenth Amendment

21  right to due Process rights against Defendants Preston and Carpenter in Counts II and

22  III. In Counts IV and V, Weddle alleges that LeGrand and Baca, respectively, are liable

23  under theories of supervisory liability for the Due Process violations asserted against

24  their employees. In Count VI, Weddle alleges a state law negligence claim against Feil,

25  Carpenter and O'Dea. Finally, in Count VII, Weddle alleges that Williams, a warden at

26  HSDP, in his official capacity only, failed to expunge Weddle's record of the disciplinary

27  conviction in violation of his due process rights. Weddle seeks injunctive and monetary

28  relief against Williams as a result.

C.    Defendants' Motion for Summary Judgment

On April 24, 2018, Defendants filed a partial motion for summary judgment seeking dismissal of Counts II through VII.  (ECF No. 24.)  Specifically, Defendants argue: (1) Counts II and III should be dismissed because Weddle did not have a protected liberty interest since he did not receive any punishment at the preliminary disciplinary hearing, and at the disciplinary hearing he was given a sanction of fifteen (15) days in disciplinary segregation, his sentence was not increased, and he did not lose any good-time credits which does not amount to an atypical hardship; (2) Counts IV and V should be dismissed because there is no supervisory liability since there was no underlying due process violation at either the preliminary disciplinary hearing or the disciplinary hearing, and, in the alternative, even if there was a due process violation because LeGrand and Baca were not deliberately indifferent; (3) Count VI should be dismissed because it is barred by sovereign immunity since Weddle failed to properly name the State of Nevada on relation of the NDOC, as required by Nevada Revised Statutes (NRS) 41.031 and 41.0337; and, (4) Count VII should be dismissed as to Weddle's request for money damages because it is barred by sovereign immunity since Williams is being sued only in his official capacity.  (ECF No. 24 at 1-27.)  In the alternative, Defendants argue that Feil, Carpenter, LeGrand, Preston, O'Dea and Baca are entitled to qualified immunity. (*Id.*)

Weddle opposed the motion (ECF No. 44), and Defendants replied. (ECF No. 45). The recommended disposition follows.

II.    **LEGAL STANDARD**

Summary judgment allows the court to avoid unnecessary trials.  *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).  The court properly grants summary judgment when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  "[T]he substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the

1    suit under the governing law will properly preclude the entry of summary judgment.

2    Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v.*

3    *Liberty Lobby*, 477 U.S. 242, 248 (1986).   A dispute is "genuine" only where a

4    reasonable jury could find for the nonmoving party.   *Id.*   Conclusory statements,

5    speculative opinions, pleading allegations, or other assertions uncorroborated by facts

6    are insufficient to establish a genuine dispute.   *Soremekun v. Thrifty Payless, Inc.*, 509

7    F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th

8    Cir. 1996).   At this stage, the court's role is to verify that reasonable minds could differ

9    when interpreting the record; the court does not weigh the evidence or determine its

10   truth.   *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw.*

11   *Motorcycle Ass'n*, 18 F.3d at 1472.

12          Summary judgment proceeds in burden-shifting steps.   A moving party who does

13   not bear the burden of proof at trial "must either produce evidence negating an essential

14   element of the nonmoving party's claim or defense or show that the nonmoving party

15   does not have enough evidence of an essential element" to support its case.   *Nissan*

16   *Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).   Ultimately,

17   the moving party must demonstrate, on the basis of authenticated evidence, that the

18   record forecloses the possibility of a reasonable jury finding in favor of the nonmoving

19   party as to disputed material facts.   *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT &*

20   *SA*, 285 F.3d 764, 773 (9th Cir. 2002).   The court views all evidence and any inferences

21   arising therefrom in the light most favorable to the nonmoving party.   *Colwell v.*

22   *Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

23          Where the moving party meets its burden, the burden shifts to the nonmoving

24   party to "designate specific facts demonstrating the existence of genuine issues for

25   trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted).

26   "This burden is not a light one," and requires the nonmoving party to "show more than

27   the mere existence of a scintilla of evidence. . . .   In fact, the non-moving party must

28   come forth with evidence from which a jury could reasonably render a verdict in the

non-moving party's favor." *Id.* (citations omitted).  The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution.  *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324.  Although the nonmoving party need not produce authenticated evidence, Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported and meritorious summary judgment motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge and set forth facts that would be admissible into evidence and the litigant attested under penalty of perjury that they were true and correct.  *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

## III.    DISCUSSION

### A.    Civil Rights Claims under Section 1983

42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000)). The statute "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights[,]" *Conn v. Gabbert*, 526 U.S. 286, 290 (1999), and therefore "serves as the procedural device for enforcing substantive provisions of the Constitution and federal statutes," *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Claims under section 1983 require a plaintiff to allege (1) the violation of a federally-protected right by (2) a person or official acting under the color of state law. *Warner*, 451 F.3d at 1067. Further, to prevail on a § 1983 claim, the plaintiff must establish each of the elements required to prove an infringement of the underlying constitutional or statutory right.

1      B.    Analysis

2            1.    Section 1983 Due Process Claims

3            Counts II and III arise out of Weddle's assertions that his right to procedural due

4      process pursuant to the Fourteenth Amendment was violated in the preliminary and

5      disciplinary hearings. The Fourteenth Amendment guarantees all citizens, including

6      inmates, due process of law.  However, only certain interests receive the guarantees of

7      due process; an inmate's right to procedural due process arises only when a

8      constitutionally protected liberty or property interest is at stake. *Wilkinson v. Austin*, 545

9      U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005).   Therefore, courts analyze

10     procedural due process claims in two parts. First, the court must determine whether the

11     plaintiff possessed a constitutionally protected interest.  *Brown v. Ore. Dep't of Corr.*,

12     751 F.3d 983, 987 (9th Cir. 2014).   Second, and if so, the court must compare the

13     required level of due process with the procedures the defendant observed. *Id.*  A claim

14     lies only where the plaintiff has a protected interest, and defendants' procedure was

15     constitutionally inadequate. *Id.*

16           Under the Due Process Clause, an inmate does not have liberty interest related

17     to prison officials' actions that fall within "the normal limits or range of custody which the

18     conviction has authorized for the State to impose." *Sandin v. Conner*, 515 U.S. 472,

19     478, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995) (citing *Meachum v. Fano*, 427 U.S. 215,

20     225, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976)).  The Clause contains no embedded right of

21     an inmate to remain in a prison's general population.  *Id.* at 485-86.  Further, "the

22     transfer of an inmate to less amenable and more restrictive quarters for nonpunitive

23     reasons is well within the terms of confinement ordinarily contemplated by a prison

24     sentence." *Hewitt v. Helms*, 459 U.S. 460, 468, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983),

25     *overruled on other grounds by Sandin*, 515 U.S. at 472-73.   "Thus, the hardship

26     associated  with  administrative  segregation,  such  as  loss  of  recreational  and

27     rehabilitative programs or confinement to one's cell for a lengthy period of time, does

28

1    not violate the due process clause because there is no liberty interest in remaining in

2    the general population." *Anderson v. Cnty. Of Kern*, 45 F.3d 130, 1315 (9th Cir. 1995).

3         State law also may create liberty interests protected under the Due Process

4    Clause but "these interests will generally be limited to freedom from restraints which . . .

5    imposes atypical and significant hardship on the inmate in relation to the ordinary

6    incidents of prison life." *Sandin*, 515 U.S. at 483-84.  As the Ninth Circuit later observed,

7    "*Sandin* and its progeny made this much clear: to find a violation of a state-created

8    liberty interest the hardship imposed on the prisoner must be 'atypical and significant . .

9    . in relation to the ordinary incidents of prison life.'" *Chappell v. Mandeville*, 706 F.3d

10   1052, 1064 (9th Cir. 2013) (quoting *Sandin*, 515 U.S. at 483-84).  Thus, under *Sandin*,

11   Weddle may show a protected liberty interest not by reference to the procedural

12   shortcomings of his disciplinary hearings, but instead by demonstrating that the

13   disciplinary segregation to which was he subjected rises to the level of "atypical and

14   significant hardship." *See id.*

15        When conducting the "atypical and significant hardship" inquiry, courts examine a

16   "combination of conditions or factors . . ." *Kennan v. Hall*, 83 F.3d 1083, 1089 (9th Cir.

17   1996).  These conditions include: (1) the extent of difference between segregation and

18   general population; (2) "the duration and intensity of the conditions confinement;" and,

19   (3) whether the sanction extends the length of the prisoner's sentence.  *See Serrano v.*

20   *Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003) (citing and discussing *Sandin*, 515 U.S. at

21   486-87); *Chappell*, 706 F.3d at 1064-65.

22        On several occasions, courts have applied the *Sandin* factors to segregated

23   confinement.  The weight of authority supports the contention that segregated housing

24   is rarely sufficiently severe to create a liberty interest.  *Deeds v. Cox*, 2016 U.S. Dist.

25   LEXIS 110067, 2016 WL 4425097, at *11-12 (D. Nev. June 28, 2016); *Machlan v.*

26   *Neven*, 2015 U.S. Dist. LEXIS 39491, 2015 WL 1412748, at *15 (D. Nev. Feb. 17,

27   2015).  Indeed, the Ninth Circuit has stated that "administrative segregation in and of

28   itself does not implicate a protected liberty interest." *Serrano*, 345 F.3d at 1078.  As to

disciplinary segregation, the Ninth Circuit has remarked that "it would be difficult . . . to make disciplinary segregation sufficiently more restrictive than the conditions of general population . . . to count as an atypical and significant deprivation of liberty . . ." *Id.* Only where the terms of confinement are extreme have most courts found that liberty interests might arise. *See, e.g., Wilkinson*, 545 U.S. at 224 (concluding that an atypical and significant hardship existed where "almost all human contact [was] prohibited," lights were kept on twenty-four (24) hours per day, exercise was only allowed indoors, solitary confinement was indefinite and reviews occurred "just annually"); *Brown*, 751 F.3d at 988.

                            a.      *Protected Liberty Interest*

Weddle has no federally created liberty interest in avoiding the term of confinement in disciplinary segregation, for this falls within the scope of punishment ordinarily contemplated by a sentence. *See Sandin*, 515 U.S. at 478, 485-86; *Chappell*, 706 F.3d at 1063.    Additionally, Weddle has no liberty interest under state law in avoiding the disciplinary sentence because Weddle's term in disciplinary segregation was not an atypical hardship.

Defendants have produced evidence that establishes beyond dispute that the conditions of Weddle's segregation were not atypical and significant.    In general population units at LCC, inmates are housed together; may shower at least three (3) times per week; freely walk in the yard; possess personal property (subject to certain regulations); have access to common fare meals; may possess electronics such as televisions; have physical access to the law library, and send and receive mail. (ECF No. 24 at Exs. 11-13.) Inmates in segregated housing are housed separately; may only shower three (3) times per week, have access to common fare meals; are limited to one (1) non-emergency phone call to family per week; cannot access any electronics such as televisions; and may possess personal property. (*Id.* at Exs. 9, 10.)  They are not allowed physical access to the law library and, instead, are required to use an inmate law library assistant. (*Id.*)  Inmates in segregation receive all first class and legal mail;

1    and have a minimum of seven (7) hours per week outdoors. (*Id.*) Finally, they face

2    greater limitations on possessing property and making purchases from the prison

3    canteen. (*Id.*) In sum, the principal difference between general population and

4    disciplinary segregation is restriction on movement and interaction with our inmates.

5    The first *Sandin* factor, therefore, points strongly against finding atypical hardship.

6    *Serrano*, 345 F.3d at 1078.

7       Additionally, the duration of Weddle's disciplinary sentence fails to support a

8    hardship finding. There is no dispute between the parties that he was only sentenced to

9    fifteen (15) days in disciplinary segregation and did not lose any good time credits.

10    (ECF Nos. 10, 24.) Fifteen (15) days is insufficient to constitute an atypical hardship.

11    *See Sandin*, 515 U.S. at 486 (finding that thirty (3) days in segregation did not constitute

12    an atypical and significant hardship); *Gorum v. Calderwood*, 2015 U.S. Dist. LEXIS

13    143067, 2015 WL 6438292, at n*4 (D. Nev. Oct. 21, 2015) (finding that forty-two (42)

14    days in segregation did not constitute an atypical and significant hardship); *compare*

15    *Brown*, 751 F.3d at 988 (finding that twenty-seven (27) months in segregation is an

16    atypical and significant hardship). Further, Weddle's sentence was not extended. (ECF

17    Nos. 10, 24.)

18       Weddle's opposition does not contest Defendants' evidence regarding the terms

19    of his disciplinary segregation. (ECF No. 44.) In fact, at no time has Weddle articulated

20    facts about the conditions of confinement that Defendants imposed upon him as

21    discipline for his G9 charge. (ECF Nos. 10, 44.) Instead, he reiterates his allegations

22    that there was a procedural due process during the disciplinary hearings because he

23    was not allowed to review the video of the incident nor was he allowed to call witnesses.

24    (ECF No. 44 at 6-8.) Weddle's contention is that he need only show a procedural

25    violation in order to be entitled to due process rights. (*Id.*) However, a procedural

26    violation absent a deprivation of a protected liberty is insufficient to entitle an inmate to

27    the protections of the Due Process Clause. *Sandin*, 515 U.S. at 484. Accordingly, no

28

1   evidentiary basis exists to conclude that Weddle has a protected liberty interest that

2   would trigger Due Process Clause protections.

3                       b.      Requirements of Due Process

4          Upon concluding that a protected liberty or property interest is at stake, the court

5   then considers whether prison officials have adhered to the due process requirements.

6   "[A] prisoner is not wholly stripped of constitutional protections when he is imprisoned

7   for a crime . . ." *Wolff v. McDonnell*, 418 U.S. 539, 555, 94 .Ct. 2963, 41 L.Ed.2d 935

8   (1974). "However, no *Wolff*-type due process protections apply unless the result of the

9   hearing is a punishment that impairs a constitutionally cognizable liberty interest as

10  defined in *Sandin* . . ." *Hernandez v. Cox*, 989 F.Supp.2d 1062, 1068 (D. Nev. 2013)

11  (citation omitted).

12         As detailed above, this Court has concluded that Weddle did not have a

13  protected liberty interest because he did not suffer an atypical and significant hardship.

14  Therefore, Weddle is not entitled to *Wolff*-type protections and this Court recommends

15  that Defendants' partial motion for summary judgment (ECF No. 24) should be granted

16  as it pertains to Counts II and III against Preston and Carpenter.

17         C.      Supervisory Liability Under Section 1983 – Counts IV and V

18         Supervisory personnel may not be held liable under section 1983 for the actions

19  of subordinate employees based on respondeat superior or vicarious liability. *Crowley*

20  *v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013); accord *Lemire v. Cal. Dep't of Corr. &*

21  *Rehab.*, 726 F>3d 1062, 1074-75 (9th Cir. 2013); *Lacey v. Maricopa Cty.*, 693 F.3d 896,

22  915-16 (9th Cir. 2012) (en banc).  A supervisor may be liable under section 1983 only

23  upon a showing of (1) personal involvement in the constitutional deprivation, or (2) a

24  sufficient causal connection between the supervisor's wrongful conduct and the

25  constitutional violation. *Redman v. Cty. Of San Diego*, 942 F.2d 1435, 1446 (9th Cir.

26  1991) (en banc) (citation omitted), abrogated in part on other grounds by *Farmer v.*

27  *Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). "Supervisory liability

28  exists even without overt personal participation in the offensive act if supervisory

1   officials implement a policy so deficient that the policy 'itself is a repudiation of

2   constitutional rights' and is 'the moving force of the constitutional violation.'" *Redman*,

3   942 F.2d at 1446 (citation omitted).  Thus, supervisory officials "cannot be held liable

4   unless they themselves" violated a constitutional right.  *Ashcroft v. Iqbal*, 556 U.S. 662,

5   676, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

6        Weddle fails to allege facts showing that LeGrand and Baca were personally

7   involved in Weddle being deprived of a constitutional right.  Weddle bases his claims of

8   supervisory liability against LeGrand and Baca on their separate reviews of his

9   disciplinary hearings, and the fact that each determined that Weddle's constitutional

10  rights were not violated therein.  (ECF No. 10 at 24-29.)  Since supervisory liability

11  requires that a constitutional violation occurred, and this Court has already determined

12  that no such underlying violation exists, LeGrand and Baca should not be held liable for

13  the disciplinary hearings conducted by Preston and Carpenter.  Thus, this Court

14  recommends that Defendants' partial motion for summary judgment (ECF No. 24)

15  should be granted as it pertains to Counts IV and V against LeGrand and Baca.[1]

16        D.    Sovereign Immunity on Negligence Claim – Count VI

17        Weddle argues that 28 U.S.C. § 1367 allows him to bring a state law negligence

18  claim against Feil and Carpenter.  (ECF No. 10 at 30-31.)  Meanwhile, Defendants

19  argue that the court lacks subject matter jurisdiction over Weddle's state law negligence

20  claim is barred under NRS 41.031 and 41.0337 because he failed to name the State of

21  Nevada and, thus, failed to invoke a waiver of the State of Nevada's sovereign

22  immunity.  (ECF No. 24 at 25-26.)

23        The Nevada State Legislature enacted 41.031 "to waive the immunity of

24  governmental units and agencies from liability for injuries caused by their negligent

25  conduct, thus putting them on equal footing with private tort-feasors." *Turner v. Staggs*,

26  89 Nev. 230, 510 P.2d 879 (1973); NRS 41.031.  To effect this waiver, a plaintiff must

27

28  [1] The Court will not address Defendants' qualified immunity argument at this time as
    Counts IV and V have been decided on an independent basis.

1   meet certain requirements set forth in N.R.S. Chapter 41; under Nevada Revised Statute

2   41.0337, a plaintiff's failure to name the State of Nevada or the particular department,

3   commission, board or other agency of the State whose actions are the basis for the suit

4   deprives the court of subject-matter jurisdiction. NRS 41.0337(1); *Jimenez v. State*, 98

5   Nev. 204, 205, 644 P.2d 1023 (1982). However, N.R.S. 41.0377 applies only to "tort

6   action[s] arising out of an act or omission within the scope of a person's public duties or

7   employment." NRS. 41.0337(1).

8       Although NRS 41.031 and the provisions it references make no distinction

9   between official capacity and personal capacity claims, section 1983 jurisprudence is

10  instructive. Official capacity suits filed against state officials are merely an alternative

11  way of pleading an action against the state entity of which the defendant is an officer.

12  *Hafer v. Melo*, 502 U.S. 21, 27, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Individual

13  capacity claims, on the other hand, seek to hold officials personally liable for their

14  unconstitutional actions taken under color of state law. *Kentucky v. Graham*, 473 U.S.

15  159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985); *see also Hafer v. Melo*, 502 U.S. 21,

16  30, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) (clarifying that the Eleventh Amendment

17  does not bar suits against state officials sued in their individual capacities).

18      If Weddle was bringing a state law tort claim against Defendants Feil and

19  Carpenter in their "official capacity" such a claim would be barred because such a suit

20  would seek to hold the State of Nevada, or NDOC, liable for the state law violations of its

21  employees. In this case, Weddle specifically states that he is suing Feil and Carpenter in

22  their individual capacity only.  (ECF No. 10 at 2.)  The Eleventh Amendment does not

23  bar suits against state officials sued in their individual capacities, therefore neither Feil

24  nor Carpenter are entitled to Eleventh Amendment protection in Count VI.  *See Hafer*,

25  502 U.S. at 30.  Furthermore, the same analysis applies to O'Dea whom Defendants

26  have requested be read into Count VI, because Weddle specifically states he is suing

27  O'Dea in his individual capacity only.  (ECF no. 10 at 5.)  Thus, this Court recommends

28

1  that Defendants' partial motion for summary judgment (ECF No. 24) should be denied as

2  it pertains to Count VI against Feil, Carpenter, and O'Dea.

3        E.     <u>Money Damages Against Defendant Williams – Count VII</u>

4        To the extent Weddle seeks to bring claims for damages against Williams in his

5  official capacity, he may not do so.  In Count VII, Weddle states that he is suing

6  Williams in his official capacity only and that he is seeking injunctive and monetary

7  relief.  (ECF No. 10 at 31, 33.)  The Eleventh Amendment prohibits suits for monetary

8  damages against a State, its agencies, and state officials acting in their official

9  capacities.  *Aholelei v. Dep't of Public Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007);

10  *Pena v. Gardner*, 976 F.2d 469, 472 (9th Cir. 1992).  As such, the Eleventh Amendment

11  bars any claim for monetary damages against Williams.

12  **IV.**  **CONCLUSION**

13        Based upon the foregoing, the Court recommends that Defendants' partial

14  motion for summary judgment be granted in part and denied in part.  The parties are

15  advised:

16        1.     Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of

17  Practice, the parties may file specific written objections to this Report and

18  Recommendation within fourteen days of receipt.  These objections should be entitled

19  "Objections to Magistrate Judge's Report and Recommendation" and should be

20  accompanied by points and authorities for consideration by the District Court.

21        2.     This Report and Recommendation is not an appealable order and any

22  notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the

23  District Court's judgment.

24  **V.**  **RECOMMENDATION**

25        **IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary

26  judgment (ECF No. 24) be **GRANTED IN PART AND, DENIED IN PART**;

27        **IT IS FURTHER RECOMMENDED** that Count VI against Defendants Feil,

28  Carpenter, and O'Dea, of the first amended complaint **PROCEED**; and

1    **IT IS FURTHER RECOMMENDED** that Count II against Defendant Preston;

2    Count III against Defendant Carpenter; Count IV against Defendant LeGrand; Count V

3    against Defendant Baca, and Count VII against Defendant Williams, be **DISMISSED**.

4    **DATED**:  January 16, 2019.

5

6    _____
     **UNITED STATES MAGISTRATE JUDGE**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28